Stephen Montoya (#011791)
**Montoya, Jimenez & Pastor, P.A.**
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
602-256-6718 (telephone)
602-256-6667 (fax)
stephen@montoyalawgroup.com

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jenna Ausema,<br><br>Plaintiff,<br><br>vs.<br><br>The GEO Group, Inc., a Florida corporation, d/b/a Central Arizona Correctional Facility,<br><br>Defendant. | No.<br><br>**COMPLAINT** |

For her Complaint against Defendant, Plaintiff alleges the following:

1. This is an action seeking to redress gender discrimination, sexual harassment and retaliation in the workplace brought by Ms. Jenna Ausema against her former employer, the Geo Group, Inc., pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (as amended).

2. This Court has subject matter jurisdiction over the federal claims asserted in this Complaint under 28 U.S.C. §§ 1331, 1343(4), and 42 U.S.C. § 2000e.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

4. Ms. Ausema is female in gender and resided in Pinal County, Arizona at all times material to this Complaint.

5. Defendant the Geo Group, Inc. ("Geo"), is a Florida corporation that maintained, operated and controlled the Central Arizona Correctional Facility ("CACF") in Florence, Arizona at all times material to this Complaint.

6.     Ms. Ausema was employed by Geo as a "Correctional Programs Officer" at CACF at all times material to this Complaint.

7.     Ms. Ausema's work performance was satisfactory to excellent at all times material to this Complaint.

8.     During the course of Ms. Ausema's employment with Geo, Geo employees—including male managers responsible for supervising female correctional officers—harassed Ms. Ausema and other female employees based on their gender and created a sexually hostile work environment in which both male managers and other male employees were allowed to sexually harass and retaliate against female employees.

9.     The sexual harassment at Geo complained of above included sexual verbal harassment and physical harassment of Ms. Ausema by multiple male employees, which included (but was not limited to) the following misconduct:

(a)  making frequent and offensive sexual and derogatory comments to Ms. Ausema, asking to see her breasts, commenting about her underwear, and making other inappropriate sexual remarks;

(b)  sexually harassing Ms. Ausema and other female employees in front of inmates, which undermined their authority over the inmates and threatened their safety;

(c)  subjecting Ms. Ausema to humiliating and offensive treatment, such as spreading rumors that Ms. Ausema was "sexually compromised by an inmate porter" and that she was having sex with another employee; moreover, when Ms. Ausema complained of some of these incidents to her supervisor, she was told that because she worked in a prison, she should have "tough skin and just get over it"; and

(d)  repeatedly propositioning Ms. Ausema, including a corporate officer asking Ms. Ausema for her personal phone number and other inappropriate questions while he was conducting a Geo Office of Professional Responsibility ("OPR") investigation into staff

misconduct, then later calling Ms. Ausema on her personal phone number to request whether she was single and could "hang-out" with him; when Ms. Ausema declined the "invitation," he reminded her that she was his subordinate and asked her whether she had any friends that he could date.

10. The discriminatory harassment summarized above was sufficiently severe and/or pervasive to alter the terms and conditions of Ms. Ausema's employment with Geo.

11. Geo was aware of complaints of sexual harassment against its male employees and that some of its male managers were engaging in the harassment.

12. Geo nevertheless failed to take reasonable preventive and corrective measures to stop the harassment; including:

    (a)    failing to report all sexual harassment complaints to Geo's Office of Professional Responsibility ("OPR") in violation of Geo's written policy requiring that all sexual harassment complaints be immediately reported to OPR;

    (b)    failing to investigate sexual harassment complaints received at CACF by supervisors; instead supervisors used their discretion to ignore or downplay complaints regarding sexual harassment;

    (c)    failing to reasonably investigate sexual harassment complaints, including failing to consider prior allegations of sexual harassment against the alleged harasser, not allowing investigators access to personnel files during the investigation; and failing to consult Geo OPR regarding investigations;

    (d)    neglecting to take adequate measures to protect female employees during pending internal sexual harassment investigations, such as failing to separate the accused and accuser pending an investigation, or transferring the alleged male harassers to different facilities where

they would work with or supervise other female correctional officers;

(e) refusing to discipline male managers in a manner that adequately addressed the severity or pervasiveness of the harassment, such as merely talking to a male manager about the inappropriateness of the behavior, even though he admitted saying in Spanish "suck [my] dick" in front of a subordinate female correctional officer; failing to discipline or re-assign the Compliance Manager, whose job duties include investigating sexual harassment allegations, after a female correctional officer complained that he had sent naked pictures of himself and offered to help her in an investigation if she gave him a "blow job"; and failing to discipline a sergeant after he smacked a female correctional officer on her buttocks in front of inmates in the cafeteria;

(f) allowing a male employee to maintain his position as Compliance Manager and his responsibilities investigating sexual harassment allegations, even though he had admitted to sending photographs of his erect penis to a female correctional officer via email;

(g) transferring male supervisory officers who engaged in harassing conduct between facilities owned by Geo despite the fact that females worked in both units; and

(h) selective reporting by supervisors of alleged harassment complaints to Geo Group management, Human Resources or OPR.

13. The facts summarized above led Ms. Ausema to reasonably conclude that she had to tolerate sexual harassment and sex-based harassment and nothing would be done to the harassers if she complained about it.

14. The facts summarized above denied Ms. Ausema of equal employment opportunities based on her gender.

15. Beginning in 2011, Defendant Geo also engaged in unlawful employment practices by retaliating against Ms. Ausema because, among other things, she complained of sexual harassment and participated as a class member in a lawsuit against Geo.

16. Ms. Ausema engaged in protected activities because she opposed the sexual harassment by (among other things) responding to an inquiry from the Civil Rights Division of the Arizona Attorney General's Office and the United States Equal Employment Opportunity Commission and affirmatively indicating her desire to participate as a class member in a civil action, specifically, <u>State of Arizona and the EEOC vs. The Geo Group</u>, No. CIV 10-1995 PHX SRB, against Geo, and by participating as a class member in the action.

17. The claims in the civil action made on Ms. Ausema's behalf, as well as on behalf of several other aggrieved women, were dismissed by the district court on procedural grounds on April 17, 2012 and are presently on appeal before the Ninth Circuit.

18. The retaliatory acts directed at Ms. Ausema as a result of her protected activities, include (but are not limited to) the conduct as set forth below:

    (a) After being named as a class member in the lawsuit, Ms. Ausema was sent home without pay on at least two occasions for alleged dress code violations based on the length of her pants, when another coworker who was <u>not</u> a class member was allowed to wear the same style of pants;

    (b) In February 2012, Ms. Ausema was placed on a 30-day watch period for tardiness even though her similarly-situated coworkers who were <u>not</u> named in the lawsuit were <u>not</u> put on 30-day watches for being tardy;

    (c) On or around April 19, 2012, Geo subjected Ms. Ausema to a coercive interview with its corporate OPR representatives who repeatedly threatened her with termination by OPR Director of

        Special Investigations Alson Kanahele ("Kanahele") if she did not answer his questions;

(d) At the time of the April 19, 2012 interview, Ms. Ausema did <u>not</u> know that she was no longer a class member in the lawsuit and requested to speak with an attorney from the Arizona Attorney General's Office or EEOC before answering questions regarding the lawsuit; her request was denied and the CACF Warden threatened to place her on administrative leave without pay, which she believed would lead to her termination, if she did not "cooperate";

(e) As a result of the stress and anxiety caused by the coercive interview, Ms. Ausema was forced to take FMLA leave in or around May 2012 and was ultimately constructively discharged;

(f) Mr. Kanahele only interviewed Geo employees who had been dismissed from the lawsuit, but did not interview any other employees regarding the facts forming the basis of the lawsuit who were not named as class members.

19. Geo has a protracted pattern of sexually harassing and retaliating against its women employees and displayed a reckless disregard for Ms. Ausema's federally protected rights.

20. Based on the foregoing misconduct of Geo, Ms. Ausema filed a timely Charge of Discrimination against Geo with both the Arizona Attorney General's Office and the United States Equal Employment Opportunity Commission (the "EEOC"). <u>See</u> attached Exhibit A.

21. After the Arizona Attorney General investigated Ms. Ausema's Charge of Discrimination, it determined that Geo had subjected her to a sexually hostile work environment and retaliated against her after she complained about it, concluding that:

> Based on the investigation, including the foregoing evidence, the Division concludes that there is reasonable cause to believe Ausema and her female coworkers were sexually harassed and subjected to a sexually hostile work environment. Moreover,

> the investigation revealed evidence giving the Division reasonable cause to believe that Geo was aware of and allowed sexually harassing conduct to persist and pervade the work environment in violation of its protective policies, rendering those policies ineffective, thereby perpetuating a sexually hostile and intimidating work environment for its female employees.
>
> The investigation revealed that similarly situated Geo employees who did not engage in protected activity were treated more favorably than Ausema. Moreover, Geo's scrutiny of Ausema's compliance with Geo policy and its threats to place her on unpaid leave for seeking to speak to an attorney for the [Arizona Attorney General and/or EEOC] before being interviewed about the lawsuit are the type of conduct that could chill an employee's participation in the lawsuit. As such, there is reasonable cause to believe that Geo retaliated against Ausema. Furthermore, because Geo did not send home another employee who dressed in the same pants as Ausema, did not discipline Appel after she continued to be tardy during her 30-day watch period, and interviewed only the former class members for its investigation, its proffered justifications for its adverse actions appear to be pretextual.

See attached Exhibit B.

22. Similarly, after the EEOC reviewed the Arizona Attorney General's investigation of Ms. Ausema's Charge of Discrimination, the EEOC determined that:

> Charging Party alleged that because of her sex, female, she was subjected to ongoing, severe, and pervasive sexual harassment and a sexually hostile environment. Charging Party further alleged that since learning of her participation in the previous lawsuit, Respondent retaliated against her by (1) forcing her to clock out and go home for alleged dress code violations, (2) placing her on a 30-day disciplinary watch period, and (3) threatening to place her on unpaid administrative leave for up to two months if she did not cooperate in an investigation related to the previous lawsuit.
>
> Having examined the Arizona Civil Rights Division's reasonable cause finding, I hereby adopt it as EEOC's finding of reasonable cause. I find that Respondent discriminated against Charging Party, Jenna Ausema, by sexually harassing her because of her sex, female. I also find that Respondent retaliated against Charging Party, Jenna Ausema, because she

>   opposed the sex discrimination and/or because she participated in the EEOC's previous lawsuit against Respondent.

See Exhibits C.

   23.   Ms. Ausema received a right to sue letter from the EEOC regarding her Charge of Discrimination on June 2, 2014 and filed this case within ninety days of her receipt of that letter.  See attached Exhibit D.

   24.   Pursuant to Rule 38 (b) of Federal Rules of Civil Procedure, Ms. Ausema hereby exercises her right to demand a trial by jury.

   Based on the forgoing, Plaintiff respectfully requests the Court to:

   I.   Issue a judgment declaring that the conduct of Geo as described above violated Ms. Ausema's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended;

   II.   Issue preliminary and permanent injunctions against Geo enjoining it from committing similar unlawful acts in the future;

   III.   Issue an injunction requiring Geo to reinstate Ms. Ausema with back-pay and all other attendant benefits, with interest;

   IV.   Issue a judgment awarding Ms. Ausema nominal, compensatory and punitive damages against Geo in amounts to be determined by the finder-of-fact at trial;

   V.   Issue a judgment awarding Ms. Ausema reasonable costs and attorney fees against Geo pursuant to 42 U.S.C. § 2000e and any other applicable law; and

   VI.   Issue a judgment awarding Ms. Ausema all other relief that is just and proper against Geo under the circumstances.

Respectfully submitted this 27th day of August 2014.

**MONTOYA, JIMENEZ & PASTOR, P.A.**

s/ Stephen Montoya
Stephen Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorney for Plaintiff Jenna Ausema

I hereby certify that on August 27, 2014, I electronically transmitted the foregoing document to the Clerk of Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

s/ Stephen Montoya

-9-