WO                    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


JENNA AUSEMA,                      )
                                   )
                    Plaintiff,     )
                                   )
        vs.                        )
                                   )
GEO GROUP INCORPORATED,            )
                                   )        No. 2:14-cv-1909-HRH
                    Defendant.     )
_____   )


O R D E R

Motion for Summary Judgment

Defendant moves for summary judgment.[1] This motion is opposed.[2] Oral argument

was requested and has been heard.

Facts

Plaintiff is Jenna Ausema.  Defendant is the GEO Group Inc.

Defendant manages the Central Arizona Correctional Facility (CACF) and Florence

West for the State of Arizona.  CACF is a medium security sex-offender unit.

_____

[1]Docket No. 34.

[2]Docket No. 37.

On January 7, 2008, plaintiff was hired by defendant as a payroll clerk at the Florence West facility.  On January 28, 2008, plaintiff transferred to the position of Inmate Accounts Clerk at CACF.  On June 16, 2008, plaintiff transferred to the position of secretary.  On October 19, 2009, plaintiff was promoted to the position of Classification Officer/Correctional Programs Officer (CPO).  Plaintiff's supervisor while she worked as a CPO was Rick Lewis.

Plaintiff received a copy of defendant's Employee Handbook when she was hired.[3]  Plaintiff also acknowledged that she received, read, and understood defendant's "policy on Sexual Harassment and Workplace Harassment."[4]

In 2009, plaintiff applied for a business manager assistant position.[5]  Another woman was selected for this position.[6]

Plaintiff testified that in 2008-2009, when she was working as an Inmate Accounts Clerk, Matthew Rice and Curtis Wille repeatedly asked to see her breasts.[7]  Rice was a

[3]Exhibit 21, Videotaped Deposition of Jenna Ausema, Exhibit C, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[4]Exhibit 22, Ausema Deposition, Exhibit C, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[5]Ausema Deposition at 162:15-163:10, Exhibit A, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Docket No. 37.

[6]Id. at 164:4-11.

[7]Id. at 85:11-87:4; Transcript of Recorded Interview of Jenna Ausema at 6:6-16, (continued...)

-2-

training manager and Wille was a correctional officer.  Plaintiff testified that she did not report this conduct to defendant "in fear of when you call the hotline, that information gets directly back into the facility that you're working at.  With everything that was going on in fear of retaliation and what they would do to me, I did not report it."[8]  Rice's employment with defendant was terminated on December 19, 2008 and Wille's employment was terminated on June 17, 2011.[9]

Plaintiff testified that after she became a CPO in 2009 she was "told many times that a woman shouldn't be a CPO[.]"[10]  Plaintiff testified that she was told this by other coworkers but she could not specifically identify any of those coworkers.[11]  Plaintiff did not report these comments to anyone at GEO.[12]

---

[7](...continued)
Exhibit B, Defendant's Motion for Summary Judgment on All of Plaintiff's Claims, Docket No. 34.

[8]Ausema Deposition at 89:7-18, Exhibit A, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Docket No. 37.

[9]Declaration of Leah Kempton at 2, ¶¶ 9-10, Exhibit D, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims.

[10]Ausema Deposition at 159:4-6, Exhibit A, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Docket No. 37.

[11]Id. at 159:4-11.

[12]Id. at 159:18-19.

On June 4, 2010, the Arizona Civil Rights Division (ACRD) filed a lawsuit against defendant alleging sexual harassment and retaliation on behalf of Alice Hancock and unidentified aggrieved women.  On September 29, 2010, the EEOC filed a similar lawsuit, which was joined with the ACRD suit.  Defendant contends, and plaintiff does not dispute, that plaintiff was first identified as one of the aggrieved women on September 1, 2011.  On April 17, 2012, plaintiff was dismissed from the <u>Hancock</u> litigation.

Plaintiff testified that in the "summer of 2010 and/or the beginning of 2011," she was sent home for being in violation of the dress code because her capris were too short.[13] Plaintiff testified that she had worn these capris numerous times before and not been sent home and that when she came back to work after changing, she saw someone else wearing capris the same length.[14]  Bennie Rollins, the Warden at CACF, avers that

> [i]n 2010, an ADOC monitor who worked at CACF informed GEO that Plaintiff was not in compliance with the dress policy. GEO asked plaintiff to leave the facility and change her clothes because if she remained at the facility, GEO would have been out of compliance with its contract with the State of Arizona.[15]

---

[13]Ausema Interview at 28:21-25, Exhibit B, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[14]<u>Id.</u> at 28:22-29:5.

[15]Declaration of Bennie Rollins at 2, ¶ 8, Exhibit A, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

In her September 28, 2010 performance evaluation, plaintiff was reminded that she "needs to remain conscious of the facilities [sic] dress code at all times."[16]

Plaintiff testified that on April 6, 2011, Jessica Gonzales, a fellow employee, told her that other staff members believed that plaintiff was having sex with an inmate and thus had been compromised.[17]  Plaintiff testified that this rumor was untrue and that she reported it to Lewis and that Gonzales filed an internal report (IR) concerning the rumor.[18]

Plaintiff testified that in June 2011, she was told that Greg Souza, an assistant shift supervisor, made a comment when she walked by about whether she was wearing spandex underwear.[19]  Plaintiff testified that she and Denise Arroyo told Souza's supervisor about the remark and he asked Arroyo to fill out an IR.[20]  Plaintiff also testified that at some point, another employee, Abe Mendoza, told her that Souza was claiming that he was having sex

---

[16]Exhibit 7 to Ausema Deposition, Exhibit C, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[17]Ausema Deposition at 107:11-109:15, Exhibit A, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Docket No. 37.  Although this is hearsay, it is possible that this evidence would be admissible at trial.

[18]Id. at 109:21-110:12.

[19]Id. at 91:12-93:11.  Although this is hearsay, it is possible that this evidence would be admissible at trial.

[20]Id. at 93:20-24.

with her.[21]   Plaintiff testified that she told her supervisor, Lewis, about both of these incidents.[22] She testified that she did not believe that "any discplin[e] happened" as a result of her reports but she acknowledged that she did not have access to Souza's personnel file.[23]  Souza's employment with defendant was terminated on March 7, 2012.[24]

In June 2011, plaintiff applied for the position of substance abuse counselor.[25] Plaintiff testified that at first she was told that she could not interview for this position because she did not have a bachelor's degree, but that she was allowed to interview for the position after she pointed out that the job posting did not state a bachelor's degree was required.[26]   Defendant contends that Greg Gardner was selected to fill this position "because he was better qualified than Plaintiff.  Specifically, unlike Plaintiff, Gar[d]ner had a bachelor's degree, which was preferred for this position."[27]

---

[21]Id. at 114:23-115:10.

[22]Id. at 233:6-22.

[23]Id. at 235:2-9.

[24]Kempton Declaration at 2, ¶ 11, Exhibit D, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[25]Id. at 3, ¶ 17.

[26]Ausema Deposition at 170:18-171:7, Exhibit A, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Docket No. 37.

[27]Kempton Declaration at 3, ¶ 17, Exhibit D, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

On July 13, 2011, plaintiff was sent home to change clothes due to a dress code violation.[28]

Plaintiff testified that in August 2011, Johnny Johnson, who was then an Assistant Regional Director, interviewed her during an internal investigation of another employee.[29] Plaintiff testified that during the interview Johnson asked her personal questions such as whether she was married and had children and asked for her phone number.[30]  Plaintiff believed that Johnson asked for her phone number because he wanted to ask her out on a date.[31]  Plaintiff testified that she did not report Johnson's conduct.[32]  Plaintiff testified that in June 2011, Johnson texted her one evening and they conversed about their kids, cooking, and their favorite foods.[33]  Plaintiff also testified that on March 23, 2012, after Johnson had moved to Arizona to work at Florence West as a Deputy Warden, he called her and asked

---

[28]Ausema Deposition at 215:24-219:14 and Exhibit 3 thereto at 134, Exhibit C, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[29]Ausema Deposition at 46:1-7, Exhibit A, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Docket No. 37.

[30]Id. at 46:8-22.

[31]Ausema Interview at 26:2-5, Exhibit B, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[32]Ausema Deposition at 47:19-21, Exhibit A, Plaintiff's Response in Opposition  to Defendant's Motion for Summary Judgment, Docket No. 37.

[33]Id. at 71:4-73:9.

if she was single and could take him out and show him the area.[34]  Plaintiff testified that

when she told Johnson that she had a boyfriend, he asked if she had any single friends who

might be able to show him around and that he "reminded me of his position, that he was

now Assistant Deputy Warden at Florence West."[35]  Plaintiff testified that she did not

report this call to anyone at GEO.[36]

Plaintiff testified that her supervisor, Lewis, asked her about a dozen times if her

divorce was final, if she was dating yet, and when was the last time she had been to the

movies.[37]  Plaintiff testified that when she told Lewis about incidents like Souza making a

comment about her underwear, he told her to have a tough skin and brush it off.[38]  She also

testified that Lewis would tell her that she was his "star" and that other people were

jealous of her because she was pretty.[39]  Plaintiff testified that she never told Lewis that his

comments made her uncomfortable but that she thought her body language told him that.[40]

She testified that Lewis never asked her out on a date but that he offered to help her move

---

[34]Id. at 53:12-54:16.

[35]Id. at 54:19-24.

[36]Id. at 55:12-14.

[37]Id. at 97:22-98:18.

[38]Id. at 98:20-24.

[39]Id. at 99:7-10.

[40]Id. at 100:10-16.

and invited her to his house to pick up some extra furniture he had.[41]  Plaintiff testified that she did not report Lewis' conduct to anyone at GEO because "he would be the one I would report it to."[42]  Plaintiff also testified about a time when she was verbally reprimanded by Lewis for having meetings with men behind closed doors.[43]   Plaintiff believed this reprimand was because she was a woman.[44]  Plaintiff also testified that in 2009, the rumor was that she had been promoted to the CPO position because she had slept with Lewis.[45]

Plaintiff testified that from the time she began her employment with defendant until she resigned her position, she heard "hundreds upon hundreds" of sexually offensive remarks, that this was "just the norm" and that she "tried to block it out."[46]  Plaintiff testified that she could not give "any specifics" about these comments but that generally, male employees would speak about female employees' bodies and "maybe possibly what they would like to do to them."[47]

_____

[41]Id. at 100:19-101:4.

[42]Id. at 100:6-9.

[43]Id. at 156:7-157:9.

[44]Id. at 158:17-19.

[45]Id. at 112:19-113:12.  Although this is hearsay, it is possible that this evidence would be admissible at trial.

[46]Id. at 446:12-447:6.

[47]Id. at 448:5:23.

On January 30, 2012, Deputy Warden Billy Massingill sent an email to the CPOs reminding them that if they clocked in more than 5 minutes past their scheduled shift time start, they were considered tardy.[48]  Massingill stated that he had "done a review of each employee's punch detail and several staff member[s] are continually clocking into work late."[49]  Plaintiff complained that this email was not sent to all the CPOs, and Massingill resent the email on January 31, 2012 to all the CPOs.[50]  In February 2012, plaintiff was placed on a 30-day attendance watch because of tardiness.  Prior to being placed on the 30-day attendance watch, plaintiff had received a written counseling for attendance in 2009,[51] had been told by Lewis in June or July 2011 to "clean up her time",[52] and on her September 23, 2011 evaluation, Lewis wrote that plaintiff had "been a few minutes late on several occasions and needs to realize the importance of being on time all of the time."[53]  In a July 3, 2012 declaration, Ausema averred that she "did not dispute that I occasionally clocked

---

[48]Exhibit 11, Ausema Deposition, Exhibit C, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[49]Id.

[50]Id. at 2.

[51]Ausema Deposition at 205:8-19, Exhibit A, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Docket No. 37.

[52]Ausema Deposition at 67:8-20 and Exhibit 3 thereto at Ausema 627, Exhibit C, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[53]Exhibit 8 to Ausema Deposition, Exhibit C, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

in 5-7 minutes late, but it was occasional, like maybe once a week."[54]  At her February 15, 2016 deposition, Ausema testified that she was tardy maybe once or twice a month.[55] Tiffany Appel, another CPO, "was also regularly tardy."[56]  Defendant contends that Appel was also placed on a 30-day attendance watch in February 2012.

In April 2012, defendant began an investigation into the allegations of sexual harassment that were raised in the <u>Hancock</u> litigation.  As part of that investigation, Alson Kanahele from defendant's Office of Responsibility came to Arizona to interview current employees.  Plaintiff was interviewed on April 19, 2012.  "As a GEO employee, Plaintiff had a duty to cooperate with administrative investigation[s.]"[57]  Kanahele avers that plaintiff "initially resisted participating in the interview, despite her duty to cooperate.  I reminded Ausema of her duty and Warden John Gay informed her she could be placed on unpaid leave if she failed to cooperate in the investigation."[58]  In a written statement completed on April 19, 2012, plaintiff stated that she asked to speak to her lawyer at the EEOC before

[54]Confidential Witness Affidavit at 3, ¶ 6, Exhibit F, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[55]Ausema Deposition at 202:24-203:11, Exhibit A, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Docket No. 37.

[56]Kempton Declaration at 3, ¶ 15, Exhibit D, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[57]Declaration of Alson Kanahele at 1, ¶ 3, Exhibit G, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[58]<u>Id.</u> at 2, ¶ 8.

answering any questions to make sure that she could speak to GEO about issues that were the subject of the pending <u>Hancock</u> case, but that Kanahele would not allow her to call her lawyer.[59]  Plaintiff stated that Kanahele told her she could have a union rep present for the interview but that the two names she was given by HR both worked the graveyard shift and thus were not available.[60]  Eventually, plaintiff was allowed to have the prison chaplain sit in on the interview.[61]  Plaintiff stated that she felt "that I was forced to answer questions since I was told that I would be walked out and placed on leave without pay with no clear return date" if she did not answer questions.[62]  Plaintiff stated that "[i]f I [had been] given a chance to call my attorney and get my questions answered I would have been more comfortable and willing to answer any questions that [were] asked to me."[63]

On May 3, 2012, plaintiff requested leave under the Family and Medical Leave Act (FMLA).[64]  Plaintiff testified that she requested leave because of the stress and anxiety she

---

[59]Confidential Declaration of Jenna Ausema at 1, Exhibit 2 to Kanahele Declaration, Exhibit G, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[60]<u>Id.</u>

[61]<u>Id.</u> at 2.

[62]<u>Id.</u> at 3.

[63]<u>Id.</u>

[64]Exhibit 16, Ausema Deposition, Exhibit C, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

was feeling as a result of her working environment.[65]  "On May 8, 2012, GEO provided

Plaintiff with paperwork for requesting leave under" FMLA.[66]  "Per GEO policy, employees

must continue to follow call-in procedures under the Attendance Policy until their FMLA

is approved."[67]  Plaintiff's FMLA leave was finally approved on July 24, 2012.[68]  Plaintiff

called in while waiting for her FMLA leave to be approved.  Plaintiff testified that when she

called, Lewis might "answer the phone [or] he may just send it to voicemail.  A few

occasions, you know, it was up/down, like I miss you.  And then on another occasion he

said, you know, this is basically abandoning [your] post."[69]  Plaintiff testified that she

thought having to call in was "more retaliation, more stress and anxiety."[70]

On May 31, 2012, plaintiff filed a Charge of Discrimination, in which she alleged that

she was subjected to a sexually hostile work environment and retaliated against because

---

[65]Ausema Deposition at 287:9-14, Exhibit A, Plaintiff's Response in Opposition to
Defendant's Motion for Summary Judgment, Docket No. 37.

[66]Kempton Declaration at 3, ¶ 19, Exhibit D, Defendant's Motion for Summary
Judgment on all of Plaintiff's Claims, Docket No. 34.

[67]Id.

[68]Exhibit 17, Ausema Deposition, Exhibit C, Defendant's Motion for Summary
Judgment on all of Plaintiff's Claims, Docket No. 34.  The approval of plaintiff's FMLA
leave was delayed because of difficulties in obtaining a medical certification from plaintiff's
mental health provider.

[69]Ausema Interview at 96:13-17, Exhibit H,  Plaintiff's Response in Opposition to
Defendant's Motion for Summary Judgment, Docket No. 37.

[70]Id. at 96:18-19.

of her participation in the <u>Hancock</u> litigation.[71]   In the Charge, plaintiff alleged that Johnson had made inappropriate statements to her and that defendant had retaliated against her by over-scrutinizing her work, sending her home for dress code violations, failing to promote her, placing her on a "pre-disciplinary" 30-day watch, and subjecting her to a "coercive interview" with Kanahele.[72]

On September 4, 2012, while out on FMLA leave, plaintiff applied for a job at Redi Carpet in Tucson.[73]   Plaintiff testified that she was "unable to return to GEO.  I was not put on doctor's orders to not return to work, period."[74]

On November 28, 2012, plaintiff resigned from her position with defendant.[75] Plaintiff stated that she was resigning "[d]ue to the mental and emotional trauma I was subjected to, and am forced to continue to endure[.]"[76]

_____

[71]Charge of Discrimination at 1, Exhibit A, Complaint, Docket No. 1.

[72]<u>Id.</u> at 2.

[73]Exhibit 25, Ausema Deposition, Exhibit C, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[74]Ausema Deposition at 317:17-21, Exhibit A, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Docket No. 37.

[75]Exhibit 19, Ausema Deposition, Exhibit C, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[76]<u>Id.</u>

On May 13, 2013, ACRD issued a reasonable cause determination on plaintiff's Charge.[77]  Based on its investigation, the ACRD concluded that "there is reasonable cause to believe Ausema and her female coworkers were sexually harassed and subjected to a sexually hostile work environment."[78]  ACRD's "investigation [also] revealed evidence giving the Division reasonable cause to believe that Geo was aware of and allowed sexually harassing conduct to persist and evade the work environment in violation of its protective policies, rendering those policies ineffective, thereby perpetuating a sexually hostile and intimidating work environment for female employees."[79]  ACRD also found that "there [was] reasonable cause to believe that GEO retaliated against Ausema" and that defendant's "proffered justifications for its adverse actions appear[ed] to be pretextual.[80] On May 24, 2014, the EEOC adopted the ACRD's reasonable cause finding.[81]

On May 29, 2014, plaintiff's right to sue letter was issued.[82]

On August 27, 2014, plaintiff commenced this action.  In her complaint, plaintiff asserts Title VII claims of sexual harassment, retaliation, and constructive discharge.

---

[77]Exhibit B, Complaint, Docket No. 1.

[78]Id. at 12.

[79]Id. at 12-13.

[80]Id. at 15.

[81]Exhibit C, Complaint, Docket No. 1.

[82]Exhibit D, Complaint, Docket No. 1.

Defendant now moves for summary judgment on all of plaintiff's claims.

<u>Discussion</u>

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. <u>Id.</u> at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." <u>T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir. 1987).

<u>Sexual Harassment Claim</u>

Plaintiff claims that she was subjected to a sexually hostile work environment.

> To make a prima facie case of a hostile work environment, a person must show "that: (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or

> pervasive to alter the conditions of the victim's employment
> and create an abusive working environment."

Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir.1995)).  "Additionally, '[t]he working environment must both subjectively and objectively be perceived as abusive.'"  Id. (quoting Fuller, 47 F.3d at 1527).  "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile."  Id.  "Finally, to find a violation of Title VII, 'conduct must be extreme to amount to a change in the terms and conditions of employment.'"  Id. (quoting Faragher v. Boca Raton, 524 U.S. 775, 788 (1998)).

There is no dispute that plaintiff was subjected to verbal conduct of a sexual nature and that this conduct was unwelcome.  The dispute here focuses on whether the alleged conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and whether plaintiff's work environment could be perceived as both objectively and subjectively hostile.

Defendant argues that plaintiff has not shown that the alleged conduct was sufficiently severe or pervasive because she cannot show a continuing violation.  "Title VII requires that '[a] charge shall be filed by or on behalf of the person aggrieved within three hundred [(300)] days after the alleged unlawful employment practice occurred....'"  Ariz. ex rel. Horne v. Geo Group, Inc., 816 F.3d 1189, 1202 (9th Cir. 2016) (quoting 42 U.S.C. §

2000e–5(e)(1)).  "For hostile work environment claims of a continuing nature, the aggrieved employee must allege 'at least one discrete act had occurred within the 300–day time frame.'"  Id. (quoting <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 892 (9th Cir. 2004)).  Then, other separate, discrete acts can be considered along with the timely act, if they constitute one unlawful employment practice.  To determine whether separate, discrete acts constitute "one unlawful employment practice, [the court] consider[s] whether they were sufficiently severe or pervasive, and whether the earlier and later events amounted to the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers."  <u>Porter</u>, 419 F.3d at 893 (internal citations omitted).

Plaintiff filed her charge on May 31, 2012.  In order for any of the discrete acts to have occurred with the 300-day time period, they would have had to occur after August 5, 2011.  Defendant argues that plaintiff's only timely allegations are 1) Johnson calling her in March 2012, 2) Lewis asking her personal questions, and 3) the comments by unknown co-workers that women should not be CPOs.  Defendant contends that all of plaintiff's other allegations occurred before August 5, 2011 and that with the exception of the other events involving Johnson, the pre-August 5, 2011 events are not related to the three timely events.  In other words, defendant insists that plaintiff's timely sexual harassment allegations are not part of the same unlawful employment practice as the time-barred sexual harassment allegations, with the exception of the events involving Johnson.

Defendant argues that the time-barred events involve different harassers (Rice and Wille), the alleged harassment occurred infrequently, and the allegations involved different actions.  And, while defendant acknowledges that plaintiff alleges that her co-workers made sexual comments on a daily basis, defendant argues that this allegation cannot be considered because plaintiff cannot remember who made any of these comments or what any of the comments were.  See Rivera v. National R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment").  But see Dominquez-Curry v. Nevada Dep't of Transp., 424 F.3d 1027, 1035 (9th Cir. 2005) (finding that the plaintiff's inability to remember "precise dates" on which discriminatory remarks were made and failure to describe the remarks in specific detail was not fatal to her claim, "especially in light of her testimony that the jokes were 'like everyday' occurrences").  Moreover, defendant points out that plaintiff kept a journal or notes about what was going on in the workplace[83] and contends that it is telling that this journal does not support plaintiff's allegation of daily sexual comments.  Defendant suggests that if plaintiff were in fact hearing such comments daily, there would have been some mention of such in her journal; but there is not.  Thus, defendant argues that plaintiff's timely allegations do not establish that the sexual conduct to which she was

---

[83]Exhibit 3 to Ausema Deposition, Exhibit C, Defendant's Motion for Summary Judgment on All of Plaintiff's Claims, Docket No. 34.

subjected was severe or pervasive.  Defendant also argues that a reasonable person would not have perceived the workplace as hostile based on these allegations.

There is at least a question of fact at to whether all of the alleged conduct (that before and that after August 5, 2011) was part of the same unlawful employment practice, which in turns creates a question of fact as to whether the sexual conduct to which plaintiff was subjected was sufficiently severe or pervasive and as to whether a reasonable person would have perceived her work environment as hostile.  See Horne, 816 F.3d at 1207 (9th Cir. 2016) ("While each of these incidents may not in itself be sufficient to support a hostile work environment claim, their cumulative effect is sufficient to raise material issues of fact as to whether the conduct was so severe or pervasive to alter the conditions of the workplace").  There is evidence that plaintiff was repeatedly asked to bear her breasts; was repeatedly questioned about her personal life by her supervisor; was subjected to offensive comments about her underwear; was falsely accused of having sex with an inmate, a co-worker, and her supervisor; was repeatedly told that women should not be CPOs; and was subjected to offensive sexual comments on an almost daily basis.  This evidence is sufficient to create a genuine issue of material fact as to whether the sexual conduct to which plaintiff was subjected was sufficiently severe or pervasive to alter the terms of her employment and as to whether a reasonable person would have perceived her work environment as hostile.  And despite defendant's contention to the contrary, there is evidence that suggests

that plaintiff subjectively found her work environment hostile, including, but not limited to, the fact that plaintiff testified that she went on leave because of the stress and anxiety that she was experiencing in the work place.

Because there are factual disputes, defendant is not entitled to summary judgment on plaintiff's sexual harassment claim.

Retaliation Claims

To establish a prima facie case of retaliation, plaintiff must show that 1) she "engaged in protected activity," 2) that she was "subsequently subjected to an adverse employment action," and 3) "that a causal link exists between the two." Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011). "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." Id. "If a plaintiff establishes a prima facie case of unlawful retaliation, the burden shifts to the defendant employer to offer evidence that the challenged action was taken for legitimate, non-discriminatory reasons." Id. "If the employer provides a legitimate explanation for the challenged decision, the plaintiff must show that the defendant's explanation is merely a pretext for impermissible discrimination." Id.

There is no dispute that plaintiff's involvement in the Hancock litigation was protected activity and that plaintiff was first identified as one of the aggrieved women on

September 1, 2011.  There is also no dispute that plaintiff's filing of a Charge of Discrimina-

tion on May 31, 2012 was protected activity.  Plaintiff also engaged in protected activity by

complaining to her supervisor about sexual harassment in April 2011 and June 2011.[84]  See

Ray v. Henderson, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000) ("Making an informal complaint

to a supervisor is also a protected activity").

As for subsequent adverse employment actions, plaintiff alleged that defendant sent

her home for dress code violations, failed to promote her, placed her on 30-day attendance

watch, and subjected her to a "coercive interview" with Kanahele.  Defendant argues that

none of these are subsequent adverse employment actions.

Defendant argues that plaintiff was sent home for dress code violations after she

engaged in protected activity.  Plaintiff testified that in the "summer of 2010 and/or the

beginning of 2011," she was sent home for being in violation of the dress code[85] and her

notes indicate that she was also sent home on July 13, 2011.[86]  The first dress code violation

---

[84]Defendant contends that in her complaint, plaintiff alleges that her only protected activity was her involvement in the Hancock litigation.  Not so.  Plaintiff alleges that her protected activity included "among other things" her involvement in the Hancock litigation and that she complained to her supervisor about some of the incidents.  Complaint at 2, ¶ 9(c) and 5, ¶ 16, Docket No. 1.

[85]Ausema Interview at 28:21-25, Exhibit B, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[86]Ausema Deposition at 215:24-219:0 and Exhibit 3 thereto at Ausema 134, Exhibit C, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.
(continued...)

incident did occur prior to plaintiff engaging in any protective activity. But, the second one occurred <u>after</u> plaintiff had complained to Lewis.

The question then is whether being sent home for a dress code violation is an adverse employment action. "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." <u>Ray</u>, 217 F.3d at 1243. "Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 928 (9th Cir. 2000). Because plaintiff was required to clock out when she went home and lost some wages as a result of being sent home, this could be considered an adverse employment action. And, although the parties do not address causal connection, there is a causal connection based on temporal proximity because plaintiff was sent home for a dress code violation  the second time shortly after she complained to Lewis about Souza. Thus, plaintiff has made out a <u>prima facie</u> case of retaliation as to the second dress code violation.

The burden then shifts to defendant to articulate a legitimate reason for sending plaintiff home. Defendant has articulated a legitimate reason, namely that plaintiff was violating the dress code by wearing a spaghetti strap or halter shirt under her sweater. The

---

[86](...continued)

dress code expressly precludes non-uniform employees from wearing "tops with spaghetti straps" or "halter tops[.]"[87]

Plaintiff argues that this was pretext for discrimination. The primary pretext evidence that plaintiff points to as to the dress code violations is related to the first time she was sent home, an incident that occurred prior to plaintiff engaging in any protected activity. Plaintiff however also argues that in looking at the question of pretext, the court should consider that defendant has repeatedly been found by the Arizona Attorney General's Office and the EEOC to have engaged in retaliation in violation of federal and state civil rights law. Plaintiff supports this argument by submitting the reasonable cause determinations in her, Jessica Gonzales', and Alice Hancock's ACRD and EEOC cases.[88] Plaintiff argues that the findings in these reasonable cause determinations are "highly probative" of defendant's retaliatory animus. Plummer v. Western Int'l Hotels Co., 656 F.2d 502, 505 (9th Cir. 1981).

What the Ninth Circuit has held is that an EEOC determination is "a highly probative evaluation of an individual's discrimination complaint." Id. (emphasis added). Thus, the reasonable cause determinations in the Gonzales and Hancock cases have no

---

[87]Employee Grooming and Dress, Section 1.4.2 and 1.4.6, Exhibit 1, Rollins Declaration, Exhibit A, Defendant's Motion for Summary Judgment on all of Plaintiff's Claims, Docket No. 34.

[88]Exhibits B-G, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Docket No. 37.

probative value here. Plaintiff's reasonable cause determinations, on the other hand, might be probative.   In the ACRD determination, which the EEOC adopted, the ACRD determined that defendant's justification for sending plaintiff home to change her pants was pretextual "because GEO did not send home another employee who dressed in the same pants as Ausema[.]"[89] But, as discussed above, this incident took place before plaintiff had engaged in any protected activity.  The reasonable cause determination says nothing about the second time plaintiff was sent home and thus plaintiff has not offered any evidence of pretext as to this incident.

Because the first dress violation happened prior to plaintiff engaging in any protected activity and because plaintiff has offered no evidence of pretext as to the second dress code violation, defendant is entitled to summary judgment on plaintiff's retaliation claim which is based on the dress code violations.

Plaintiff also contends that defendant retaliated against her by placing her on a 30-day attendance watch.  Even assuming that this were an adverse employment action, plaintiff cannot make out a prima facie case of retaliation because there is no evidence of a causal connection between any of plaintiff's prior protected activity and this action. Plaintiff was placed on the 30-day watch in February 2012.  Neither her complaints to Lewis, her being identified as an aggrieved person in the Hancock litigation, nor the filing

---

[89]Reasonable Cause Determination at 15, Exhibit B, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Docket No. 37.

of her Charge of Discrimination occurred in close proximity. See Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (citation omitted) (noting that a court may not infer causation from temporal proximity unless the time between an employer's knowledge of protected activity and an adverse employment action is "very close" in time and citing cases for the proposition that a three-month and four-month lapse is insufficient to infer causation).  Defendant is entitled to summary judgment on plaintiff's retaliation claim that is based on the 30-day attendance watch.

Plaintiff also contends that the interview with Kanahele was retaliatory.  Assuming without deciding that this was an adverse employment action and that there was a causal connection between the interview and plaintiff's involvement in the Hancock litigation, defendant has articulated a legitimate reason for the investigation, namely the need to investigate the allegations made in the Hancock litigation.  The burden then shifts to plaintiff to show evidence of pretext.

Plaintiff seems to argue that it is evidence of pretext that only people involved in the Hancock litigation were interviewed, which is what the ACRD found in its reasonable cause determination.  The ACRD concluded that it was evidence of pretext that defendant "interviewed only the former class members for its investigation[.]"[90] But this is insufficient evidence to defeat a motion for summary judgment.  A plaintiff must come forward with

---

[90]Reasonable Cause Determination at 15, Exhibit B, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Docket No. 37.

specific and substantial circumstantial evidence to survive a motion for summary judgment. <u>Bergene v. Salt River Project Agric. Improvement and Power Dist.</u>, 272 F.3d 1136, 1142 (9th Cir. 2001). While this is specific evidence, it is not substantial, particularly given the fact that plaintiff had a duty to cooperate with the investigation. Defendant is entitled to summary judgment on plaintiff's retaliation claim that is based on the Kanahele interview.

Plaintiff also contends that defendant retaliated against her by failing to promote her. Defendant argues that these claims would be time-barred because these incidents occurred more than 300 days before plaintiff filed her Charge of Discrimination. Because plaintiff makes no argument in response, plaintiff is deemed to have abandoned her retaliation claim based on a failure to promote. <u>Shakur v. Schriro,</u> 514 F.3d 878, 892 (9th Cir. 2008).

Finally, in her response to defendant's motion for summary judgment, plaintiff argues that defendant retaliated against her by making her call in each day while her FMLA request was being approved. Plaintiff contends that defendant did this to harass her and argues that this could be considered an adverse employment action.

This allegation was not in plaintiff's Charge of Discrimination. "Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate

the charge."  <u>B.K.B. v. Maui Police Dep't</u>, 276 F.3d 1091, 1099 (9th Cir. 2002).  However,

"[s]ubject matter jurisdiction extends over all allegations of discrimination that either 'fell

within the scope of the EEOC's actual investigation or an EEOC investigation which <u>can</u>

<u>reasonably be expected</u> to grow out of the charge of discrimination.'"  <u>Id.</u> (quoting <u>E.E.O.C.</u>

<u>v. Farmer Bros. Co.</u>, 31 F.3d 891, 899 (9th Cir. 1994)).

> The factors a district court may consider in determining
> whether the new claim is reasonably related to the allegations
> contained in the EEOC charge include "the alleged basis of the
> discrimination, dates of discriminatory acts specified within the
> charge, perpetrators of discrimination named in the charge,
> and any locations at which discrimination is alleged to have
> occurred.  In addition, ... the extent that those claims are
> consistent with the plaintiff's original theory of the case."

<u>Lewis v. Ariz.,</u> Case No.  CV 10–2387–PHX–JAT, 2011 WL 3665367, at *4 (D. Ariz. Aug. 22,

2011) (quoting <u>B.K.B.</u>, 276 F.3d at 1100).

Assuming without deciding that plaintiff exhausted her administrative remedies as

to this claim, defendant is still entitled to summary judgment on this claim.  Being made

to call in every day cannot be considered an adverse employment action.  At most, this was

an inconvenience and "'mere inconveniences ... do not qualify'" as adverse employment

actions.  <u>Foraker v. Apollo Group, Inc.</u>, 427 F. Supp. 2d 936, 941-42 (D. Ariz. 2006) (quoting

<u>Sanchez v. Denver Pub. Schs.</u>, 164 F.3d 527, 532 (10th Cir. 1998)).

Constructive Discharge Claim

Defendant argues that it is entitled to summary judgment on plaintiff's constructive discharge claim because plaintiff did not exhaust her administrative remedies as to this claim. Although plaintiff did not allege a constructive discharge claim in her Charge of Discrimination, plaintiff's constructive discharge claim is reasonably related to her hostile work environment claim because it was her work environment which led plaintiff to resign.

But even if plaintiff has exhausted her administrative remedies as to her constructive discharge claim, defendant argues that it is still entitled to summary judgment on this claim. "In order to survive summary judgment on a constructive discharge claim, a plaintiff 'must show there are triable issues of fact as to whether a reasonable person in [her] position would have felt that [she] was forced to quit because of intolerable and discriminatory working conditions.'" Hardage v. CBS Broadcasting Inc., 427 F.3d 1177, 1184 (9th Cir. 2005) (quoting Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir. 1994)). Defendant argues that no reasonable person would have felt forced to quit in November 2012 given the fact that plaintiff left the workplace in May 2012, Johnson had not contacted her for two months and Rice, Wille, and Souza no longer worked for defendant. Defendant contends that Lewis was the only alleged "harasser" left when plaintiff resigned and that her allegations against him are too trivial to support a constructive discharge claim.

-29-

There is at least a question of fact as to plaintiff's constructive discharge claim. Plaintiff testified that she finally resigned because she had still not been cleared to return to work at GEO.  In other words, plaintiff is contending that she continued to suffer from stress and anxiety related to the hostile environment even though she was not actually working at CACF.  "Courts have denied summary judgment on constructive termination claims where the plaintiff has not formally resigned and is on an extended medical leave of absence." <u>Violan v. On Lok Senior Health Services</u>, Case No. 12–cv–05739–WHO, 2013 WL 6907153, at *13 (N.D. Cal. Dec. 31, 2013).  It necessarily follows that it would be appropriate to deny summary judgment on a constructive discharge claim where the employee finally resigns after being on an extended medical leave of absence.  Plaintiff's absence from the work place is not fatal to her constructive discharge claim.  Defendant is not entitled to summary judgment on plaintiff's constructive discharge claim.

## Conclusion

Defendant's motion for summary judgment[91] is granted in part and denied in part. The motion is granted as to plaintiff's retaliation claims.  These claims are dismissed with prejudice.  The motion is otherwise denied.

DATED at Anchorage, Alaska, this 30th day of June, 2016.

/s/ H. Russel Holland
United States District Judge

---

[91]Docket No. 34.